UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCO MAESTRINI,

    Plaintiff,

       v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.
_____/

No. C 07-2941 PJH

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART AND DENYING IT IN PART**

    Before the court is defendants' motion for partial summary judgment. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion in part and DENIES it in part.

## BACKGROUND

    This is a case alleging civil rights violations, under 42 U.S.C. § 1983, and also alleging state law claims, brought by plaintiff Marco Maestrini against defendants City and County of San Francisco ("the City"), San Francisco Chief of Police Heather Fong, San Francisco Police Officer Jesse Serna, and 25 Doe defendants.

    On October 28, 2006, plaintiff and a group of friends, dressed in Halloween costumes, went to a bar located on Broadway, in the North Beach area of San Francisco. The group had met earlier at a friend's house, and took cabs to the North Beach bar, arriving around 9:00 p.m. Plaintiff claims that he had two drinks at the friend's house, and

another two drinks at the bar.

Plaintiff's version of the incident is as follows: At approximately 1:15 a.m., plaintiff left the bar with his friend Brandon Brock. Mr. Brock testified that plaintiff did not appear intoxicated when they left the bar. Just outside, they observed a police paddy wagon, many people walking the streets, and a large police presence.

When they left the bar, plaintiff and Mr. Brock noticed a group of four or five police officers standing over a man who was on the ground, in the street approximately 4-5 feet from the curb. The man was also wearing a Halloween costume. According to plaintiff and Mr. Brock, the police officers were beating the man.

Plaintiff claims that he stood back and let Mr. Brock do all the talking, and that Mr. Brock said to the police officers something to the effect of, "That's not right." According to plaintiff, Officer Serna then approached the two and told them to leave and/or clear the sidewalk. Mr. Brock began moving backward, and asked Officer Serna for his name and badge number.

Plaintiff claims that at this point, Officer Serna shoved Mr. Brock in the back, pushed him to the ground, put his knee in Mr. Brock's back, and handcuffed him. The officers told plaintiff to leave, but plaintiff told them he would not leave and asked them why they had handcuffed Mr. Brock. In response, the officers handcuffed plaintiff and pulled him farther into the street.

Plaintiff then told the officers that Mr. Brock was a future California Highway Patrol officer. He asserts that this was an attempt to deflect the officers' attention away from Mr. Brock. Plaintiff claims that in response, Officer Serna shoved him in the back, causing him to stumble forward. Plaintiff asked Officer Serna why he had pushed him and said that he had not done anything, and asked Officer Serna for his name and badge number.

Plaintiff asserts that Officer Serna responded by striking him in the back of the head, causing him to collide head-first with the side of a Sheriff's bus. Plaintiff fell on his face, and claims that while he was on the ground, he felt a "barrage of strikes" to his head from Officer Serna and several other officers. Plaintiff asked Mr. Brock if he was bleeding, and

what he had done wrong. Plaintiff claims that Officer Serna then accused him of "crying like a girl."

Plaintiff states that he was detained while an ambulance was called to the scene. He was taken to the hospital, where he claims he incurred medical bills of $4,000. He asserts that he suffered headaches for several weeks after the incident, and also suffered damage to one ear and severe psychological distress.

Defendants' version of the incident is as follows: Officer Serna was "working crowd control" in the North Beach area on the evening of October 28, 2006. He came over to assist two or three officers he saw struggling with a resisting arrestee (although he had not been called to assist). He testified that he did not observe the officers punch or kick the suspect. He recalled hearing someone say something about force being used against the resisting suspect, but he does not know who it was.

Officer Serna asserts that as he approached, he saw plaintiff and Mr. Brock standing in the street, about five feet away from the scuffle involving the officers and the resisting arrestee. He told plaintiff and Mr. Brock repeatedly to get back on the sidewalk, but they refused, although four or five other people that he told to get back did comply with the order.

Officer Serna claims that both plaintiff and Mr. Brock were arguing with him as he tried to get them to move back on to the sidewalk. He says that both had glassy eyes and "alcohol breath." He grabbed plaintiff and told him he was under arrest, and plaintiff started to walk backward into the street.

Officer Serna then grabbed plaintiff's shirt and pulled him forward, but plaintiff pulled away in the direction of the traffic, so Officer Serna grabbed at him "a little bit harder this time" and then "did an arm bar control and basically guided him to the ground because he was intoxicated and he had a hard time standing." Plaintiff then fell to the ground – "more like a collapse" because he was intoxicated – and Officer Serna went down with plaintiff to the ground. He knew that plaintiff had been injured because he knew that the ambulance took plaintiff to the hospital.

Officer Serna testified that plaintiff was "intoxicated and belligerent" but that he did not make any threats. Officer Serna denied calling plaintiff "a girl," and says that he did not see him crying.

Plaintiff filed this action on June 6, 2007, and filed the first amended complaint ("FAC") on September 12, 2007. The FAC asserts seven causes of action: (1) a claim under § 1983, alleging excessive force and false arrest in violation of the Fourth and Fourteenth Amendments, against Officer Serna; (2) a claim under § 1983 alleging ratification of a continuing pattern of civil rights violations by Officer Serna and unnamed Doe officers, in violation of the Fourth and Fourteenth Amendments, against the City and Chief Fong; (3) a Monell claim under § 1983 alleging Fourth and Fourteenth Amendment violations, against the City; (4) a state law claim of assault and battery, against Officer Serna and unnamed Doe officers; (5) a state law claim of false imprisonment, against Officer Serna and unnamed Doe officers; (6) a state law claim of intentional infliction of emotional distress, against Officer Serna and unnamed Doe officers; and (7) a claim of violation of California Civil Code § 52.1 (Bane Act), against Officer Serna and unnamed Doe officers.

Defendants now seek partial summary judgment, seeking judgment as to all claims except the § 1983 excessive force claims alleged against Officer Serna.

**DISCUSSION**

A.   Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp.

4

1  v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof
2  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other
3  than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,
4  888 (9th Cir. 2003).

5       On an issue where the nonmoving party will bear the burden of proof at trial, the
6  moving party can prevail merely by pointing out to the district court that there is an absence
7  of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the
8  moving party meets its initial burden, the opposing party must then set forth specific facts
9  showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.
10 R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

11 B.     Defendants' Motion

12     1.     Constitutional claims against Officer Serna

13      Defendants argue that plaintiff's false arrest and false imprisonment claims fail
14 because Officer Serna had probable cause and/or reasonable suspicion to arrest or detain
15 plaintiff for violations of San Francisco Police Code § 157, California Penal Code § 148, or
16 California Penal Code § 647(f).  Defendants also contend that even if Officer Serna did not
17 have probable cause to arrest/detain plaintiff, clearly established law does not show that
18 Officer Serna violated the Fourth Amendment, and any mistake of fact was reasonable
19 under the circumstances.

20      Plaintiff contends that defendants' motion should be denied because material
21 disputed facts preclude a finding that the arrest was supported by probable cause.

22     a.     Probable cause to arrest

23      Defendants contend that Officer Serna had probable cause to arrest plaintiff for
24 violating Police Code § 157, which provides that "[w]henever the free passage of any street
25 or sidewalk shall be obstructed by a crowd, except on occasion of public meeting, the
26 persons composing such crowd shall disperse or move on when directed to do so by any
27 police officer."

28      Defendants assert that the evidence is undisputed that when Officer Serna, who was

in the area "working crowd control," told plaintiff and Mr. Brock to disperse, they refused to do so. Plaintiff admitted in his deposition that he repeatedly refused to leave.

Defendants argue that Officer Serna also had probable cause to arrest plaintiff for violating California Penal Code § 148, which makes it a crime to "willfully resist[ ], delay[ ], or obstruct[ ] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment."

Defendants assert that plaintiff admitted, at his deposition, that he and Mr. Brock approached a group of police officers as they were dealing with a resisting arrestee; and that when Officer Serna directed plaintiff and Mr. Brock to leave, they refused to do so, and that plaintiff in fact repeatedly refused to leave. Defendants argue that these actions created reasonable suspicion to detain and/or probable cause to arrest plaintiff for violation of Penal Code § 148.

In opposition, plaintiff argues that Officer Serna's request for plaintiff to disperse was not lawful because plaintiff's actions were protected the First Amendment's Free Speech clause; and similarly, that he was not obstructing police action, but rather was exercising his Free Speech rights. Relying on Gulliford v. Pierce County, 136 F.3d 1345 (9th Cir. 1998), plaintiff asserts that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is "shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." See id. at 1349.

Plaintiff claims that this case is similar to U.S. v. Poocha, 259 F.3d 1077 (9th Cir. 2001). In that case, a group of rangers at Yosemite were struggling with a suspect, trying to effectuate an arrest. A group of 30-50 people gathered, and many of them expressed anger and hostility towards the officers. The officers directed the crowd to disperse, including the plaintiff, who responded with obscene language, clenched fists and puffed-out chest. The Ninth Circuit, finding that "criticism of the police is not a crime," held that the plaintiff's speech was not stripped of its constitutional protection simply because it was "accompanied by aggressive gestures." Id. at 1082.

6

Defendants also argue that Officer Serna had probable cause to arrest plaintiff for violating California Penal Code § 647(f). Under § 647(f), any person who is "found in any public place under the influence of intoxicating liquor, . . . in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, . . . interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way," is guilty of disorderly conduct, a misdemeanor. Cal. Penal Code § 647(f).

Defendants point to testimony by plaintiff that he had consumed no less than four alcoholic beverages on the night of the incident. Officer Serna testified that he observed signs that plaintiff had consumed alcohol, including the smell of alcohol on plaintiff's breath, and his unsteadiness on his feet. In addition, defendants contend, plaintiff posed a danger to himself and others when he was "backing into the middle (traffic) lanes of Broadway" (citing the police Incident Report); and also posed a danger to Officer Serna and other officers by failing to leave the area when directed to do so by a police officer.

In opposition, plaintiff asserts that a material fact exists as to whether he was intoxicated in public. He admits that he had a few drinks during the course of the evening, but denies being intoxicated or unable to care for his own safety as the time of the incident. He also notes that in contrast to Officer Serna's testimony, Mr. Brock testified that in his opinion, plaintiff was not intoxicated at the time of the encounter with the police officers.

Probable cause to arrest exists when under the totality of the circumstances known to the arresting officer, a prudent person would conclude that there is a fair probability that the arrestee had committed or was committing a crime. Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004). The plaintiff in a civil rights action has the burden of proving lack of probable cause, after a defendant has provided "some evidence that the arresting officers had probable cause at the moment of the arrest." Dubner v. City & County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001).

Defendants have established that Officer Serna had probable cause to arrest plaintiff for violation of Police Code § 157 (failure to disperse) and Penal Code § 148 (obstructing a

7

police officer in the performance of his official duties).[1]  Plaintiff's physical proximity and refusal to comply with Officer Serna's order to move a safe distance away from the nearby police activity constituted both failure to disperse when ordered to do so by a police officer, and resisting, delaying, or obstructing a police officer.  The crime of delaying or obstructing a police officer in the discharge of his duties includes standing too close to the location of an arrest or detention, or failing to move away.  In re Mohammed C., 95 Cal. App. 4th 1325, 1329-30 (2002).

The evidence shows further that plaintiff was not arrested for exercising his First Amendment rights.  Rather, he was arrested for failing to disperse or failing to leave the scene when ordered to do so, or for interfering with Officer Serna and/or the other officers in their performance of their duties.

Specifically, plaintiff was not arrested for any statement he may have made regarding how the officers were treating the suspect, but rather because he was standing in the street an unsafe distance – only a few feet away – from a physical altercation between a suspect and police officers, and was refusing to comply with an officer's orders to move back away to the sidewalk where he and his friend (and the officers and the suspect) would be safe.  Thus, plaintiff's argument that he was exercising his Free Speech rights is without merit.

As defendants note in their reply brief, the fact that a person is speaking just prior to, or even at, the time that he is arrested does not render him immune from arrest.  Under such a theory, anyone could evade arrest by the simple expedient of verbally criticizing the behavior of the police.  On the other hand, even if plaintiff's First Amendment argument had some merit, and plaintiff's defiance had been joined with some protected criticism of the police, that would not bar plaintiff's arrest for undisputed nonverbal conduct (failing to move away, remaining dangerously close to a physical altercation between police and a suspect).

---

[1] In light of the disputed testimony regarding indicia of intoxication, the court does not find that there was probable cause to arrest plaintiff for violation of Penal Code § 647(f) (public intoxication).

8

For this reason, plaintiff's reliance on Poocha is misplaced. The plaintiff in that case had been convicted for two separate offenses – one arising from using profanity against a law enforcement officer, and one arising from defiance of that same officer's order to back away from an arrest in progress. In the portion of the opinion quoted by plaintiff here, the Ninth Circuit held that the plaintiff's use of profanity was mere speech, not "fighting words," and was therefore protected under the First Amendment. However, in a portion of the opinion not cited by plaintiff, the Ninth Circuit upheld the plaintiff's conviction for refusing to obey the ranger's order to back away from an arrest in progress, under a federal statute requiring compliance with a lawful order. Poocha, 259 F.3d at 1083.

      b.      Qualified immunity

Defendants argue that even if Officer Serna did not have probable cause to arrest plaintiff, he is protected by qualified immunity, because clearly established law does not show that he violated the Fourth Amendment, and any mistake of fact was reasonable under the circumstances.

Defendants assert that it is undisputed that plaintiff repeatedly refused to comply with, and blatantly defied, Officer Serna's directive that he leave the area; that he approached a group of police officers who were dealing with a resisting suspect; that he had consumed numerous alcoholic beverages; and that he was exercising poor judgment that potentially threatened his safety and the safety of others. Under these circumstances, defendants argue, the arrest was not clearly established as unlawful.

In opposition, plaintiff asserts that the same factual disputes that preclude the court from granting summary judgment on defendants' probable cause argument also preclude the court from granting summary judgment on the issue of qualified immunity. In particular, plaintiff notes that he and Mr. Brock testified that they observed several police officers abusing a suspect and commented on the abuse to the officers (the First Amendment argument), and that they both also testified that plaintiff was not intoxicated at the time of their encounter with the police.

Plaintiff claims that in response to their questioning, Officer Serna became "enraged and abusive," ultimately causing plaintiff significant injuries to his head. Plaintiff claims that Officer Serna's testimony contains outright falsehoods (though he doesn't identify the alleged falsehoods, other than to assert that Officer Serna fabricated the basis for plaintiff's arrest).

Plaintiff argues that no reasonable officer would believe that he could "arrest citizens for exercising their First Amendment right to freedom of speech by criticizing police action in a manner that does not amount to fighting words, simply because it annoys them." Plaintiff also asserts (without citation to authority) that "[i]t is clearly established that it is unlawful to use one's police power to stamp out a citizen's exercise of their Constitutional rights," and that defendants are therefore not entitled to qualified immunity.

The question raised by defendants' motion is whether Officer Serna is entitled to qualified immunity, thereby protecting him from liability for civil damages arising from plaintiff's claims of false arrest and false imprisonment. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step process for resolving claims of qualified immunity. First, a court must consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id.

In Pearson v. Callahan, 129 S.Ct. 808 (2009), the Court modified this approach, holding that "the Saucier protocol should not be regarded as mandatory in all cases, "but instead judges should exercise their sound discretion as to which of the two prongs of the analysis to address first." Id. at 818. The Court determined that the officers in that case were entitled to qualified immunity "on the ground that it was not clearly established at the

10

time of the search that their conduct was unconstitutional" without first deciding whether the facts shown by the plaintiff constituted a violation of a constitutional right. Id. at 822.

The court finds that the motion must be GRANTED. For the reasons stated above, even were the court to assume that plaintiff was not intoxicated, the evidence presented shows that he failed to disperse or move out of the street when ordered to do so, and that he was also standing in the close vicinity of a police-arrestee altercation, thereby obstructing the police in their performance of their official duties. Thus, Officer Serna had probable cause to arrest him, and there was no constitutional violation for false arrest or false imprisonment.

   2.   State law claims

Defendants argue that the state law claims (the Civil Code § 52.1 claim and the claims of assault and battery, false imprisonment, and intentional infliction of emotional distress) fail because, while plaintiff did file a tort claim with the City, the claim he filed did not mention Civil Code § 52.1, assault and battery, false imprisonment, or intentional infliction of emotional distress.

A copy of plaintiff's administrative tort claim is attached as Exhibit B to the Declaration of Robert Bonta in support of defendants' motion. In the claim, plaintiff describes the "injury, property damage or loss" as "Five gashes around my head, All Hospital Bills, From MRI, Ambulance Bill." Plaintiff indicates the "amount of Claimant's property damage or loss" as "CA Emergency Phys – $318.00; Saint Francis Memorial Hospital – $3568.00," for a total amount claimed of $3886.00.

In the box labeled "Basis of Claim," plaintiff states "on separate page." In the attachment, plaintiff describes the incident, and states that the police grabbed him and his friend when they told the officers they "didn't think that was right" (referring to "four cops beating someone up"), and that the police handcuffed plaintiff, threw him to the ground, and hit him in the head with their feet and hands. Plaintiff claims that the blow knocked him out for "a couple of seconds" and that he had five gashes on his head. He claims that he is "stuck with all these medical bills for something I didn't do" and that he can't afford the bills.

Defendants contend that plaintiff's administrative tort claim does not specify the legal and factual basis for any of his state law claims, and that the state law claims should therefore be dismissed.

In opposition, plaintiff argues that the administrative tort claim alleges facts that support a civil rights cause of action, because it asserts that the officer retaliated against plaintiff for his exercise of his constitutional right to free speech. Plaintiff asserts that the false imprisonment claim is support by allegations that the officers grabbed and handcuffed plaintiff, forcing him to move against his will. Plaintiff contends that the assault and battery claim is supported by the facts that the officers threw plaintiff to the ground and beat him about the face and head, causing him to lose consciousness. Plaintiff argues that the intentional infliction of emotional distress claim is "born out of Defendant Officer Serna and the other officer's taunting of Plaintiff after the beating, and also subjecting him to the beating without any probable cause to arrest Plaintiff."

The court finds that the motion to dismiss the state law claims must be GRANTED in part and DENIED in part. Under California law, before suing a public entity, a plaintiff must first present a tort claim that specifies the legal and factual basis for his claim against the entity or its employees. "Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." Williams v. Braslow, 179 Cal. App. 3d 762, 767-70 (1986).

This claim presentation requirement applies to claims for monetary relief – whether based on tort, contract, statute, or state constitutional provisions. See Baines Pickwick Ltd. v. City of Los Angeles, 72 Cal. App. 4th 298, 309 (1999) (contract and tort claims); Nuremburg Actions v. County of Contra Costa, 697 F.Supp. 1111, 1113 (N.D. Cal. 1988) (state constitutional claims); Gatto v. County of Sonoma, 98 Cal. App. 4th 744, 765 (2002) (Unruh Act claims).

The facts alleged by plaintiff in the administrative claim arguably support a state law claim for assault and battery, and the court finds that the motion must therefore be denied

as to that claim.[2]  However, there are no facts alleged that support the other state law claims.  In addition, the only damages claimed are monetary damages in the form of hospital bills, and an "ambulance bill" for which plaintiff states no amount.  Even if plaintiff could proceed on the civil rights claim or the claims for false imprisonment and intentional inflection of emotional distress, he could not recover any damages.[3]

       3.      Claim against Chief Fong

Defendants argue that summary judgment must be granted as to the claim asserted against Chief of Police Heather Fong because plaintiff has no evidence to show that she personally violated his civil rights.

In opposition, plaintiff asserts that no fewer than nine lawsuits have been filed against the City and Officer Serna since 1997, alleging that Officer Serna, sometimes under circumstances similar to those alleged in the present case, used unreasonable force and/or falsely arrested the plaintiffs in those cases.

Plaintiff contends that by pointing to all these lawsuits, he has established the existence of a custom or informal policy.  He suggests that the complaints or dockets in these cases somehow constitute evidence of repeated constitutional violations, and argues

---

[2] In their reply brief, defendants argue for the first time that plaintiff's assault claim also fails because plaintiff was surprised by the use of force and was never placed in apprehension that he would be attacked.  They assert that a civil assault claim in California requires an action that threatens to cause harmful contact, plus a reasonable belief by the victim that he was about to be harmfully touched.

Defendants contend that in the present case, plaintiff testified that a split second after he asked Officer Serna for his name and badge number, he felt a blow to the back of his head from a hard object, the force of which threw him forward two or three feet into the Sheriff's bus; and that while he was handcuffed, he hit his head against the bus and fell straight down, where he received numerous blows to his head from a hard object.  Defendants contend that because plaintiff was undisputably not placed in apprehension of harmful touching, his assault claim fails.  The court does not reach this issue because plaintiff did not have an opportunity to address it.

[3] In a separate argument, defendants contend that the Bane Act claim also fails because plaintiff has no evidence of use of violence coupled with an intent to interfere with the exercise of a constitutional right.  Defendants assert that the Bane Act is applicable only when a plaintiff can show that a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by the plaintiff.  Because the Bane Act claim is dismissed because plaintiff failed to raise it in a tort claim under the Government Code, the court finds it unnecessary to reach this additional basis for dismissal.

13

that the City and Chief Fong have failed to show that Officer Serna was ever discharged or disciplined for those violations. Plaintiff asserts that Chief Fong has in essence, "turned a blind eye" to severe constitutional violations perpetrated by Officer Serna.

The court finds that the motion must be GRANTED. Liability under § 1983 arises only upon a showing of personal participation by the defendant. A supervisor is liable for the constitutional violations of subordinates only if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); see also Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007).

Here, plaintiff has provided no evidence showing any personal participation by Chief Fong in any constitutional violations. In addition, as explained in the following section, plaintiff has not established the existence of an unconstitutional custom or policy.

4.  Claim against the City

Defendants argue that the claim against the City must be dismissed because plaintiff has not established an underlying constitutional violation. In addition, to the extent that plaintiff may have created a triable issue as to the underlying constitutional violation, defendants argue that he has not shown that an unconstitutional municipal policy, custom or usage caused the constitutional violation. In particular, defendants assert that plaintiff has provided no evidence showing that the incident was caused by any deliberate indifference to the need to train or supervise.

In opposition, plaintiff makes the same arguments regarding the claim against the City as he did with regard to the claim against Chief Fong. Plaintiff asserts that no fewer than nine lawsuits have been filed against the City and Officer Serna since 1997, alleging that Officer Serna, sometimes under circumstances similar to those alleged in the present case, used unreasonable force and/or falsely arrested the plaintiffs in those cases.

Plaintiff contends that by pointing to all these lawsuits, he has established the existence of a custom or informal policy. He suggests that the complaints or dockets in these cases somehow constitute evidence of repeated constitutional violations, and argues

14

that the City has failed to show that Officer Serna was ever discharged or disciplined for those violations.

Plaintiff asserts that the City has, in essence, "turned a blind eye" to severe constitutional violations perpetrated by Officer Serna. Plaintiff claims that a reasonable fact-finder might conclude that the City had a policy or custom of authorizing or permitting abusive behavior by its police officers, particularly Officer Serna.

The court finds that the motion must be GRANTED. To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91 (1989).

A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008).

Because municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit. Brown, 520 U.S. at 403; Monell, 436 U.S. at 690-91; Fogel, 531 F.3d at 834. "Where a plaintiff claims that the municipality . . . has caused an employee to [violate plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Brown, 520 U.S. at 405.

Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Allegations of random acts, or single instances of misconduct, however,

are insufficient to establish a municipal custom. Navarro v. Block, 72 F.3d 712, 714 (9th Cir. 1996). Once the plaintiff has demonstrated that a custom existed, the plaintiff need not also demonstrate that "official policy-makers had actual knowledge of the practice at issue." Id. at 714-15.

The plaintiff may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. City of Canton, 489 U.S. at 388-91; Blankenhorn v. City of Orange, 485 F.3d 463, 484-85 (9th Cir. 2007). Such a showing depends on three elements: (1) the training program must be inadequate in relation to the tasks the particular officers must perform; (2) the city officials must have been deliberately indifferent to the rights of persons with whom the local officials come into contact; and (3) the inadequacy of the training must be shown to have actually caused the constitutional deprivation at issue." Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989) (citations and quotations omitted).

Regardless of what theory the plaintiff employs to establish municipal liability – policy, custom or failure to train – the plaintiff must establish an affirmative causal link between the municipal policy or practice and the alleged constitutional violation. City of Canton, 489 U.S. at 385; Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

Here, summary judgment must be granted because plaintiff has not met his burden of establishing all the elements of a Monell claim. That is, he has provided no evidence that the City has a policy; that the policy "amounts to deliberate indifference" to his constitutional rights; or that the policy was the "moving force" behind the alleged constitutional violation. Moreover, plaintiff is improperly seeking to shift his burden to defendants, by arguing that the City was somehow obligated to provide evidence that it did discipline Officer Serna or take some action in response to the various complaints against Officer Serna.

Plaintiff cannot prove deliberate indifference through unsubstantiated hearsay complaints. A list of prior complaints against an officer, without more, is insufficient to create a trial issue of fact regarding a municipality's policy of inadequately investigating or

16

disciplining officers. See Simms v. City and County of Honolulu, 2008 WL 3349069 at * (D. Haw. 2008).

In addition, incidents that occurred nearly a decade ago fail to establish causation. The "evidence" provided by plaintiff includes a lawsuit filed in 1997, two filed in 1998, and two more filed in 2000. These complaints, filed between 7 and 10 years before the complaint was filed in the present action, are too remote in time to establish causation. Similarly, the City's response to incidents that occurred after the October 29, 2006 incident could not have been the moving force behind any constitutional deprivation that plaintiff may have suffered. The incidents that form the basis of three of the cited complaints occurred after the incident that forms the basis of the present action, and are therefore irrelevant.

Finally, plaintiff's unsubstantiated allegations regarding the City's purported failure to discipline a single officer, as opposed to a systematic policy, cannot support a claim of municipal liability. Plaintiff has provided no evidence as to whether or not Officer Serna was disciplined. Moreover, a Monell claim will fail where the plaintiff provides evidence as to only a single officer, rather than evidence regarding department-wide inadequacy in training. See Blakenhorn, 485 F.3d at 484-85.

5.     Claims against Doe defendants

Defendants argue that plaintiff cannot proceed to trial against the Doe defendants. Defendants assert that plaintiff has had every opportunity to discover the identity of the Does, and has yet to amend the complaint to identify any such defendants or assert any claims against them. Defendants contend that it would be extremely prejudicial if plaintiff were allowed to bring any new defendants into the case at this late stage.

In opposition, plaintiff asserts that defendants have suffered no prejudice from plaintiff's use of Doe defendants, and will not be likely to suffer any prejudice. Plaintiff claims that any defendant substituted for a Doe defendant would likely be a San Francisco Police Officer. Plaintiff claims that discovery is "still fresh," as Officer Serna's deposition was taken in mid-February 2009.

The court finds that the motion must be GRANTED. The deadline for filing amended pleadings was 90 days before the close of fact discovery, which is now closed. Although the parties requested amendment of the case management and pretrial order to extend various deadlines, at no time has plaintiff ever sought relief from the case management order to amend the complaint to substitute a named defendant for a Doe defendant. And having not sought to amend the complaint, plaintiff cannot now reasonably argue that the claims against the Doe defendants should not be dismissed.

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion as to the § 1983 false arrest and false imprisonment claims; the state law claims for violation of Civil Code § 52.1, intentional infliction of emotional distress, and false imprisonment; the claim against Chief Wong; the Monell claim against the City; and the claims against the Doe defendants.

What remains in the case are the state law claim for assault and battery, and the § 1983 Fourth Amendment claim for excessive force.

**IT IS SO ORDERED.**

Dated: March 26, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge